## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ROBERT BLAINE TRENT,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:22CV00224 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **BETH CABELL, WARDEN,** | ) | JUDGE JAMES P. JONES |
| **SUSSEX I STATE PRISON,** | ) | |
| | ) | |
| Respondent. | ) | |

*Bryan Jones, BRYAN J. JONES, LLC, Charlottesville, Virginia, for Petitioner; Victoria Johnson, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Respondent.*

Petitioner Robert Blaine Trent, a Virginia inmate proceeding by counsel, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his 2019 state convictions for indecent liberties with a minor and using a communication system to solicit a minor. Upon review of the record and pleadings, I find that Trent has failed to exhaust his claims in the state court, thereby defaulting them, and that he has failed to overcome the default because his claims are not substantial.

I.

Trent was indicted by a grand jury in Lynchburg, Virginia, on June 6, 2016, for five counts of indecent liberties with a minor under the age of 15, in violation

of Virginia Code § 18.2-361, -370; one count of using a communication system to solicit a minor under age 15 by someone at least 7 years older than the child, first offense, in violation of Virginia Code § 18.2-361, -374.3; nine counts of using a communication system to solicit a minor under age 15 by someone at least 7 years older than the child, second or subsequent offense; one count of production of child pornography, first offense, in violation of Virginia Code § 18.2-361, -374.1, one count of production of child pornography in violation of Virginia Code § 18.2-374.1; and nine counts of production of child pornography, second or subsequent offense in violation of Virginia Code § 18.2-374.1.  Br. Supp. Mot. Dismiss Ex. 1, Indictment, ECF No. 8-1.  On April 25, 2017, pursuant to a written plea agreement, Trent pled no contest to the five counts of indecent liberties and the ten counts of using a communication system to solicit a minor; the prosecution agreed to nolle prosequi the ten counts of production of child pornography.  *Id.* at Ex. 3, Disclosure of Plea Agreement, ECF No. 8-3.

Before accepting Trent's plea, the trial court conducted a colloquy to ensure that the plea was knowing, voluntary, and intelligent.  Trent confirmed that he was entering his plea in exchange for the prosecution's agreement to seek nolle prosequi of the other ten charges.  Trent asserted that he understood the charges against him, had sufficient time to discuss the charges with his attorney, and understood what the prosecution must prove for a conviction.  Trent indicated that

he had discussed possible defenses to the charges with his attorney, and that he was satisfied with his attorney.  He admitted deciding on his own that entering a guilty plea was in his best interest, and he agreed that there was enough evidence to support a conviction for each offense.  *Id.* at Ex. 13, Hr'g Tr. 3–7, ECF No. 8-13. Additionally, Trent signed a two-page form, which covered the same representations, including the sentencing range of 100 years to 440 years in prison, with up to 95 years of mandatory minimum time, which the court might order to be served consecutively.   Id. at Ex. 14, Plea of No Contest, Statement of Defendant, ECF No. 8-14

The prosecutor proffered to the court the following factual basis for the plea:

On December 4th, 2014, thirteen year old identified as MGM and her parents were called into the guidance counseling office at a middle school because the thirteen year old was contemplating suicide.  She revealed at that time that she had been in an online relationship with a thirty-one year old [sic] man she knew as Bobby Trent who lived in a State that started with a V and that he worked night shift at a Burger King and this had occurred between November and December of 2014.  MGM stated that the two had originally met on a gaming site called God Rush, a Greek mythology gaming site and that the conversation progressed to a sexual nature from there via Facebook Messenger and text messages via cell phone.  MGM advised the Columbia [Missouri] Police Department that Trent called her his bitch and his pet and that he also made her call him sir.  She further stated that Trent ordered her to send him nude photos of herself or things would be much worse when they met in person.  Columbia Police Department seized and examined several digital devices belonging to MGM and discovered several digital images of an adult male penis that MGM stated she had also received from Trent.  The case was referred to the Southern Virginia ICAC for follow up and to attempt to locate Trent.  Investigator Watkins was assigned the case agent and

obtained and executed multiple search warrants and Court orders for records from various telecommunications and online service providers including Facebook, AT&T and AOL.  Watkins' investigation led to the execution of a search warrant at [Trent's home] in the City of Lynchburg.  Detective Poindexter reviewed two hundred — more than two hundred pages of Facebook returns from Mr. Trent's Facebook profile and observed multiple dates during the conversation that MGM clearly identified herself as being only thirteen years of age and Trent also acknowledging that she was only thirteen years of age. . . .  Detective Poindexter conducted a physical data extraction to the [defendant's] Samsung Galaxy S4 cell phone. . . .  On that, Your Honor, he found multiple other information, approximately seventy-three pages of notable texts for the Court's review.  All those communications between the victim MGM and suspect Bobby Trent occurred between November 20th and December the 3rd of 2014.  There were over eight hundred SMS text messages amongst those seventy-one pages.  There were a total of nine images and videos of child pornography exchanged between the two.

Hr'g Tr. 8–10, ECF No. 8-13.

In addition to the pornographic pictures and videos, the messages from Trent to MGM, which were introduced into evidence, were lascivious and vile.  He used graphic four-letter words to describe sexual acts he would perform on her, including descriptions of bondage and sadomasochism; he demanded that she send him pictures and videos of herself, not just naked, but in sexual positions, with items like a hairbrush stuck inside her.  R. at 552–689.[1]

At a presentence hearing on November 29, 2017, counsel introduced testimony from both a long-time family friend and from Trent's mother.  Both

---

[1] Citations to "R." refer to the records of the Lynchburg Circuit Court in *Commonwealth v. Trent*, CR16000344, using the page numbers typed in the lower right corner of each page.

witnesses described Trent as a kind-hearted person who would go out of his way to help someone in need.  His mother also identified two major stressors in Trent's life in late 2014, when the offenses occurred: The death of his grandfather, to whom he was very close, and the break-up with his girlfriend, who took their daughter away and disappeared.  Counsel also called the probation officer to testify about the appropriate guideline range in the absence of mandatory minimums, which was 27 years, 7 months to 44 years, 1 month, with a midpoint of 36 years, 9 months. R. at 383–400.  Defense counsel asked the court to run Trent's sentences mandatory sentences concurrently, giving him 10 years to serve, and to suspend sentences imposed for indecent liberties.   Counsel informed the court that concurrent sentences could be imposed, citing *Brown v. Commonwealth*, 733 S.E.2d 638 (Va. 2012).  The prosecution conceded that the sentences need not be consecutive, based on *Brown*, but argued that 95 years was an appropriate sentence based on the facts of the case.  R. at 419–29.

Before pronouncing his sentence, the trial court stated:

[I]f the Legislature enacts a law and they use the word mandatory minimum, in my view they are saying in no uncertain terms, for certain crimes, Judges, you must impose this sentence, this is a mandatory minimum sentence, Judges, that you must impose and that language is unequivocal.  It is, in my view, not open to construction. When the General Assembly fixes a punishment and tells the Judge that you must impose a mandatory minimum sentence, then my hands are tied.

. . . .

> I do not believe that I can, in good faith, even though there may be a case that says I may be able to do it, I don't believe I'll be honest to my oath as a Judge . . . if I were to run it concurrent as the Defendant wants me to do, . . . that would no longer be a mandatory minimum.

R. at 434–35.  Adding that he was "duty bound to follow the law as set forth by our Legislature," the court imposed 10 years for the first offense of using a communication device to solicit a minor, suspending five years, and leaving the five mandatory years to be served for the first offense, as required by Virginia Code § 18.2-374.3(C).  R. at 436.  For each of the nine second or subsequent offenses under that section, he imposed 20 years on each and suspended 10 of those years on each, with those sentences to run consecutively with each other and with the first offense.  On the five counts of indecent liberties with a minor, he imposed five years on each, 25 years in total, to run concurrently with the mandatory 95 years.  The court imposed an indefinite term of probation with various conditions upon Trent's release.  R. at 436–38.  The judgment order, entered November 30, 2017, recited a total sentence imposed of 215 years, with 95 years suspended and 95 years to serve concurrently with 25 years.  Br. Supp. Mot. Dismiss Ex. 4, Order entered 11/20/2017, ECF No. 8-4.

Trent appealed the sentence.  The Court of Appeals of Virginia reversed, finding that the trial court erred in finding that it was required to run the mandatory sentences consecutively.  *Id.* at Ex. 5, Order entered 1/8/2019, ECF No. 8-5.  On

remand, the trial judge began the proceeding by acknowledging that he had been wrong in his conclusion that he had to run the sentences consecutively. He stated that he held "no ill will toward defense for raising the issue," and that he wanted to get the decision right. *Id*. at Ex. 15, Resent'g Hr'g Tr. 3, ECF No. 8-15. He allowed the parties to introduce the evidence they wished and to argue for the appropriate sentence. The defense called Trent's mother, who testified as she had at the earlier sentencing hearing. Counsel again asked for a 10-year active sentence, with all charges running concurrently, and the prosecutor urged the court to impose the same 95-year sentence. After hearing the evidence and arguments, the court recessed to consider the decision.

Upon returning to the bench, the court stated:

I thought long and hard about what I was going to do in this case and I think it was instructive, although painful to hear the Commonwealth recite again just exactly what was said in these text messages, just what was communicated to this fourteen year old girl [sic] in Ohio and on multiple occasions, not just one night where somebody's had too much to drink and says something they regret . . . but over and over again at a -- at a vile content that makes it difficult to listen. You can't listen to what Mr. Trent communicated to this young woman and not cringe, not have a visceral, almost a gut reaction yourself . . . . [T]hese are just each day, not each message but each day worth of messages, just shows a pattern of contact that is just so depraved that it just shocks the conscience of the Court.

*Id*. at 31–32. He concluded by noting that he could run the sentences concurrently, but he decided to leave the previous sentencing order in effect in its entirety, running the ten sentences consecutively, for 95 years to serve, with 95 years

suspended, and 25 years for the five indecent liberties charges to run concurrently with the 95 to serve.  *Id.* at 32–33.  The court entered the final resentencing order on March 29, 2019.  *Id.* at Ex. 6, Order entered 3/29/2019, ECF No. 8-6.

Trent again appealed, alleging that the trial court erred in entering the same sentence previously imposed, but the Court of Appeals of Virginia declined to consider the issue, finding that it was procedurally defaulted because counsel had not objected to the sentence when it was imposed.  Further, the court declined to consider the issue under an ends of justice exception.  *Id.* at Ex. 7, Order 11/15/2019, ECF. No. 8-7.  The Supreme Court of Virginia refused a petition for appeal on December 21, 2020, *Id.* at Ex. 11, ECF No. 8-11, and denied a petition for rehearing on February 5, 2021.  *Id*. at Ex. 12, ECF No. 8-12.

Trent filed a pro se state habeas petition in the Supreme Court of Virginia on March 21, 2022, more than one year after final disposition of his direct appeal, alleging ineffective assistance of counsel in advising him to plead guilty to the charges without a sentencing agreement.  On June 24, 2022, the court dismissed his petition as untimely.  Notice of State Ct. Decision Ex. A, ECF No. 10-1.  While that petition was pending, Trent secured counsel, who recognized that the untimely state petition would not toll the statute of limitations on Trent's federal habeas action.  Counsel timely filed the present § 2254 petition on April 25, 2022, raising the following issues:

1. Ineffective assistance of trial counsel in advising Trent "to forgo a trial and plead guilty to all offenses"; and

2. Ineffective assistance of trial counsel in failing to preserve Trent's *North Carolina v. Pearce* Due Process sentencing claim for appellate review.

## II.

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court reviewing a § 2254 petition is limited by the doctrines of exhaustion, procedural default, and independent and adequate state law grounds. These procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court. 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court, on the merits, before he is entitled to seek federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Failure to do so "deprive[s] the

state courts of an opportunity to address those claims in the first instance."
*Coleman*, 501 U.S. at 732.

A separate but closely related issue is the doctrine of procedural default. If a
state court has clearly and explicitly denied a petitioner's claim based on a state
procedural rule that provides an independent and adequate ground for the state
court's decision, that claim is procedurally defaulted for purposes of federal habeas
review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A state procedural
rule is independent if it does not depend on a federal constitutional ruling, and it is
adequate if it is firmly established and regularly applied by the state court. *Yeatts
v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1999). A claim that has not been
presented to the highest state court and would be procedurally barred as untimely
or successive if the petitioner tried to present the issue to the state court now is
considered simultaneously exhausted and defaulted. *Bassette v. Thompson*, 915
F.2d 932, 936–37 (4th Cir. 1990).

Under the principles set forth above, both of Trent's claims are defaulted.
He raised his first claim, ineffective assistance of counsel in advising him to plead
guilty instead of going to trial, in his state habeas petition. However, the Supreme
Court of Virginia dismissed the petition as untimely under Virginia Code § 8.01-
654(A)(2). This time limitation has long been recognized as an adequate and
independent state ground for dismissal of a habeas claim, and thus, the claim is

procedurally defaulted in federal habeas as well.  *Baker v. Clarke,* 95 F. Supp. 3d 913, 917–18 (E.D. Va. 2015).  Trent's second claim was never presented to the state court at all, as Trent conceded.  Mem. Support Pet. 9–10, ECF No. 2.  That claim cannot now be filed in the state court because it would be both successive and untimely and is thus simultaneously exhausted and defaulted.

Before a federal habeas court will consider a procedurally defaulted claim (or a claim that is considered exhausted and defaulted), the petitioner must show both cause for the default and actual prejudice from the claimed federal violation. *Coleman*, 501 U.S. at 750.  When the defaulted claim alleges ineffective assistance of trial counsel, the Supreme Court recognized a more forgiving standard for cause and prejudice in *Martinez v. Ryan*, 566 U.S. 1 (2012).  Under *Martinez*, a federal district court may address a defaulted claim of ineffective assistance of trial counsel if (1) the claim is substantial, (2) the cause for default is the lack of counsel or ineffective assistance of counsel under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), and (3) the state post-conviction proceeding was the first time such a claim could be raised under state law.  *Moore v. Stirling*, 952 F.3d 174, 185 (4th Cir. 2020).

Trent meets the second and third criteria.  He had no counsel in his state habeas proceeding and claims for ineffective assistance of counsel in Virginia must be asserted in habeas corpus proceedings, not on direct appeal.  *Lenz v.*

*Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001). To be a substantial claim, as required by the first criterion, the claim must have some merit. *Martinez,* 566 U.S. at 14. For the reasons stated in the next section, I find that these claims are not substantial.

### III.

### Claim One.

Trent alleges that counsel was ineffective for advising him to plead guilty to all offenses rather than proceed to trial. First, as framed, the claim misstates counsel's recommendation and the plea agreement. In exchange for Trent's plea of no contest to five counts of indecent liberties with a minor under age 15 and ten counts of using a communication device to solicit a minor under age 15 (nine of which were second or subsequent offenses), the Commonwealth's Attorney agreed to *nolle prosequi* the ten charges of production of child pornography under Virginia Code § 18.2-374.1 (nine of which were second or subsequent offenses). Unlike the charges to which Trent pled guilty, § 18.2-374.1(C3) required its mandatory minimum terms of imprisonment to be served consecutively with each other and with any other sentence. For the first offense, the sentence range was five to thirty years, with five years being a mandatory minimum. For the second or subsequent offenses, the sentence range was 15 to 40 years, with a mandatory minimum of 15 years on each. The evidence introduced to the court and made part

of the record would have amply supported a conviction on each charge, requiring a mandatory minimum of 140 years just on those charges, with a possible maximum sentence of 390 years, just on those charges.

Second, to establish a claim of ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Trent can establish neither.

Messages retrieved from Trent's mobile phone, which he acknowledged was his phone, and from his Facebook account, contained over 200 inappropriate messages to the child, as well as nine pictures and videos of child pornography, and at least two pictures of Trent's male anatomy. Among the messages between them were several conversations discussing that the girl was 13 years old, such that there could be no credible claim that he did not know or have reason to know of her age. Counsel correctly advised Trent that he faced up to 440 years in prison on the fifteen charges to which he pled guilty, 95 of which were mandatory minimums that he hoped he could persuade the court to run concurrently rather than consecutively. If Trent had gone to trial on the twenty-five charges against him, he would have been facing up to 830 years in prison, 235 of which would have been mandatory minimums, and 140 years of which would be required to run

-13-

consecutively.  The evidence would amply support a conviction for each of the twenty-five charges.

Trent alleges that counsel persuaded him to enter a plea agreement by "inducing an unfounded or unjustified fear."  Mem. Supp. Pet. 11, ECF No. 2. From the record, any fear induced by counsel was neither unfounded nor unjustified.  Trent states that plea discussions with counsel did not include the possibility of any defense to the charges.  However, he has not identified any possible defense he would have had.  An attorney's "'blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter [a] plea, [does not] constitute improper behavior or coercion.'"  *United States v. Albarran*, 943 F.3d 106, 124 (2d Cir. 2019) (citation omitted).  Far from being deficient, Trent's counsel provided a realistic assessment of the likely outcome of a trial.

As Respondent notes, Trent's current allegations contradict his colloquy with the court and his signed statement at the time of the plea.  Hr'g Tr. at 4–12, ECF No. 8-13.  He stated he understood the charges against him and had time to discuss any defenses he had with counsel.  He believed that pleading no contest was in his best interest, a decision he made for himself.  He agreed that the prosecution had proffered the evidence that would be introduced at trial.  He acknowledged that the range of punishment on the charges to which he was

-14-

pleading was 100 to 440 years, with up to 95 years of mandatory minimum time, in the discretion of the court.  He acknowledged that the court could run the sentences consecutively.  He stated that no one had threatened him or forced him to enter the plea, and that no one had made promises of leniency to him.  Finally, he expressed satisfaction with his attorney and that he had ample time to discuss his case with his attorney.  *Id.*  The representations of a defendant during plea proceedings "constitute a formidable barrier" in subsequent habeas proceedings.  *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).  Absent clear and convincing evidence to the contrary, Trent is bound by the representations he made during the plea colloquy and in his written statement.  *Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001).

When determining whether to set aside a guilty plea because of ineffective assistance of counsel, the prejudice prong of the analysis focuses on whether there is a reasonable probability that the defendant would have insisted on going to trial, but for counsel's performance.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  This is not a subjective test, but an objective one.  The petitioner must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  Trent has failed to meet this burden.  His claim — that he would have risked consecutive mandatory minimum sentences of an additional 140 years at trial if he had known

he would get 95 years by pleading no contest — defies common sense and is patently incredible.

Because he can demonstrate neither deficient performance nor prejudice, Claim One is not substantial, and Trent has not overcome his procedural default.

Claim Two.

Trent alleges that the trial court vindictively imposed the same active sentence of 95 years on remand that it had imposed at the first sentencing hearing, during which the judge stated that he had no choice about running the mandatory minimum sentences consecutively.  Because counsel did not object to the sentence or raise a claim for violation of due process under *North Carolina v. Pearce*, 395 U.S. 711 (1969), Trent alleges ineffective assistance of counsel.  In *Pearce*, the Court considered the due process considerations surrounding the imposition of a higher sentence after a defendant has successfully appealed his case.  The Court recognized that vindictiveness must "play no part in the sentence he receives" after exercising his right to appeal.  *Id.* at 725.

Trent has offered no evidence or argument to support that counsel's performance was deficient.  Trial counsel strenuously argued for an active term of 10 years, rather than 95.  The grounds for objecting to a trial court's sentence is a strategic decision for counsel which should not be second-guessed by a reviewing court.  *Gonzalez v. United States*, 553 U.S. 242, 248–49 (2008) (holding that

counsel has the last word on matters such as what objections to raise, absent a demonstration of ineffectiveness).

Further, Trent cannot show prejudice.  The Fourth Circuit has identified the threshold question in a *Pearce* challenge as whether an increased sentence was imposed.  *United States v. Ventura*, 864 F.3d 301, 310 (4th Cir. 2017).  Only if an increased sentenced was imposed will the court address whether the defendant can show actual vindictiveness or a reasonable likelihood thereof.  *Id.*  The trial court did not impose an increased sentence on Trent after his appeal.  The sentence imposed was the same.  Accordingly, no successful *Pearce* argument was available to Trent, and he cannot be prejudiced by counsel's failure to raise a losing argument.

Because he can show neither deficient performance nor prejudice, Trent's claim is not substantial and has been procedurally defaulted.

## IV.

For the reasons stated, I will grant Respondent's Motion to Dismiss.  Trent's claims are procedurally defaulted, and he has not overcome his procedural default.

I decline to issue a certificate of appealability because Trent has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural ruling to be debatable or wrong.

A separate Final Order will be entered herewith.

-17-

DATED:  September 18, 2023

/s/ JAMES P. JONES
Senior United States District Judge